IN THE UNITED STATES DISTRCIT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION - COLUMBUS

| | |
|---|---|
| THE CINCINNATI INSURANCE COMPANY a/s/o William Lavelle 6200 S. Gilmore Road Fairfield, OH 45014 | :**CASE NO.: 2:13-CV-00051 (MHW/EPD)** : : **DISTRCIT JUDGE WATSON** : **MAGISTRATE JUDGE DEAVERS** : |
| Plaintiff, | : : |
| vs. | : **AMENDED COMPLAINT** : |
| OMEGA FLEX, INC. 451 Creamery Way Exton, PA 19341 | : **TRIAL BY JURY DEMANDED** : : : |
| And | : : |
| DAVID R. WHITE SERVICES, INC. d/b/a DAVID WHITE SERVICES 5315 Hebbardsville Road Athens, Ohio 45701 | : : : : : |
| Defendants. | : : |

## THE PARTIES

1.    Plaintiff, The Cincinnati Insurance Company (hereinafter " Cincinnati") is a corporation organized and existing under the laws of the State of Ohio with a principal place of business located at 62  S. Gilmore Road, Fairfield, Ohio 45014.

2.    At all times material hereto, Cincinnati was duly authorized to issue policies of insurance in the State of Ohio, and provided insurance to William Lavelle (hereinafter "Plaintiff's Insured") pursuant to policy no. H010229476 (hereinafter the "Policy").

3.      Plaintiff's Insured, William Lavelle (hereinafter "Lavelle"), is an adult individual who resided at 20 McGuffey Lane, Athens, Ohio 45701 (hereinafter "the Property").

4.      Defendant Omega Flex, Inc. (hereinafter "Omega") is a corporation incorporated in the Commonwealth of Pennsylvania and actively doing business in the State of Ohio, Athens County.

5.      At all material times, Defendant Omega designed, engineered, manufactured, inspected, tested, marketed, sold, distributed and/or placed into the stream of commerce a product known as corrugated stainless steel tubing ("CSST") for use in the distribution of natural gas and/or propane in various applications, including residential homes. Specifically, Defendant Omega placed its CSST into the stream of commerce such that it was installed in the Property.

6.      Defendant David R. White Services, Inc. d/b/a David White Services (hereinafter "DWS") ") is a corporation organized and existing under the laws of the State of Ohio with a principal place of business located at 5315 Hebbardsville Road, Athens, Ohio 45701.

7.      The Registered Agent for Defendant DWS is David White who is located at 197 West State Street, Athens, Ohio 45701.

8.      At all material times, Defendant DWS purchased, distributed, sold, inspected, tested, placed into the stream of commerce and/or installed CSST for use in the distribution of natural gas and/or propane in various applications, including residential homes and did purchase, distribute, sell, place into the stream of commerce, inspect, test, install CSST, manufactured by Defendant Omega, in the Property.

## JURISDICTION

9.     The Plaintiff is a citizen of a different state than Defendant Omega.

10.     The Plaintiff and newly added Defendant DWS are both citizens of the State of Ohio and, therefore, diversity of citizenship pursuant to 28 U.S.C. §1332 does not exist amongst the parties.

11.     The amount in controversy in this matter exceeds the value of $75,000.00 exclusive of interest and costs.

## THE FACTS

12.     At all times material to this action, Plaintiff's Insured, William Lavelle, owned and occupied the Property.

13.     Construction of the Property was completed sometime in July 2003.

14.     During the construction of the Property Defendant DWS installed CSST into the Property that was manufactured by Defendant Omega.

15.     On or about July 18, 2012 a lightning strike occurred at or near the Property and breached the CSST manufactured by Defendant Omega and installed by Defendant DWS resulting in a hole in the product.

16.     This puncture and subsequent hole allowed gas to escape from the CSST and ignite a substantial fire that spread to the rest of the Property (hereinafter "the fire").

17.     As a result of the fire, Plaintiff's Insured suffered significant damages to the Property and its contents and sustained significant losses, totaling in excess of $600,000.00.

18.     Pursuant to the Policy, Plaintiff Cincinnati expects to make payments to or on behalf of Plaintiff's Insured in excess of $600,000.00 in connection with the subject fire.

19.     Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments it has made or will make to Plaintiff's Insured or on his behalf.

## COUNT I
### Plaintiff v. Omega
### (Strict Liability)

20.     At all times relevant herein, Defendant Omega was a manufacturer which designed, manufactured, inspected, tested, marketed, sold, distributed, and/or placed into the stream of commerce the CSST that was installed into Plaintiff's Insured's residence.

21.     The aforementioned product was defective in manufacture.

22.     The aforementioned product was defective in its design.

23.     The aforementioned product was defective, due to inadequate warning and/or instruction.

24.     The aforementioned product was defective because it did not conform, when it left the control of the aforementioned Defendant herein, to a representation(s) made by said Defendant.

25.     A defective aspect of the subject product, specifically including, but not limited to its failure in the form of the development of punctures or leakage in the event of a lightning strike was a direct and proximate cause of the damages and losses incurred by Plaintiff's Insured and to which Plaintiff Cincinnati has a subrogated interest, all of which for Plaintiff seeks to recover compensatory damages for.

26.    On or about July 18, 2012, Plaintiff's Insured was residing at the Property when lightning struck the Property resulting in the defective CSST to rupture, release gas, and cause a substantial fire causing the total destruction of the Property and the contents therein.

27.    As a direct and proximate result of the defective product, Plaintiff's Insured sustained damages in excess of $600,000.

28.    Pursuant to the Policy, Cincinnati anticipates making payments to or on behalf of Plaintiff's Insured in excess of $600,000 in connection with the subject fire and because Cincinnati is contractually, legally, and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments it has made and will make to Plaintiff's Insured, Plaintiff Cincinnati has sustained damages in excess of $600,000.

WHEREFORE Plaintiff demands judgment in favor and against Defendant Omega in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

### COUNT II
### Plaintiff v. Omega
### (Negligence)

29.    Defendant Omega owed Plaintiff's Insured a duty to use ordinary care in connection with the design of the CSST, the selection of materials used to manufacture the CSST, the assembly of the CSST, the inspection of the CSST, the testing of the CSST and the packaging of the CSST in order to protect users and, in particular, Plaintiff's Insured from an unreasonable risk of harm when using the CSST for its intended purpose.

30.    Defendant Omega owed Plaintiff's Insured a duty to give reasonable and adequate instructions with respect to the conditions and methods of the safe use of CSST

since danger of fire was reasonably foreseeable when CSST was used in the manner in which it was intended.

31.    Defendant Omega owed Plaintiff's Insured a duty to exercise ordinary care and skill in connection with the design, engineering, manufacture, inspection, testing, marketing, sale and/or distribution of CSST and/or placing CSST into the stream of commerce.

32.    Defendant Omega owed Plaintiff's Insured a duty to exercise ordinary care to protect Plaintiff's insured against the risk of fire.

33.    Defendant Omega owed Plaintiff's Insured a duty to exercise ordinary care to ensure that the CSST was reasonably fit for the purpose for which it was designed, engineered, manufactured, inspected, tested, marketed, sold, distributed, placed into the stream of commerce and/or intended to be used.

34.    Defendant Omega breached these duties by failing to exercise ordinary care and skill in the design, engineering, manufacture, inspection, testing, marketing, sale, distribution of CSST and/or placing CSST into the stream of commerce.

35.    The July 18, 2012 fire and resultant damages were the direct and proximate result of the negligence, gross negligence, recklessness and/or carelessness and/or negligent acts and/or omissions by Defendant Omega, both generally and specifically, as follows:

        a.    Designing, engineering, manufacturing, testing, marketing, distributing, selling and/or inspecting CSST and/or placing CSST into the stream of commerce;

b.  Failing to observe and exercise a reasonable degree of care and skill in the design, engineering, manufacture, testing, marketing, distribution, sale and/or inspection of CSST and/or placing CSST into the stream of commerce;

c.  Failing to design, engineer, manufacture, test, market, distribute, sell and/or inspect CSST and/or place CSST into the stream of commerce so that it was safe and fit for its intended use;

d.  Failing to ensure that CSST could withstand anticipated levels of electrical activity generated by lightning strikes;

e.  Failing to implement a bonding and/or grounding procedure in connection with the installation of CSST;

f.  Failing to warn Plaintiff's Insured that the CSST piping was defective and could start a fire;

g.  Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, engineering, manufacture, testing, marketing, distribution, sale and/or inspection of the CSST piping so that it was safe and free from risk of fire;

h.  Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant Omega knew, or in the exercise of due care, should have known, were not properly trained to design, engineer, manufacture, test, inspect, sell, market and/or distribute CSST and/or place CSST into the stream of commerce;

i.   Failing to design, engineer, manufacture, market, distribute, sell, test and/or inspect CSST and/or place CSST into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

j.   Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, engineering, manufacture, packaging, testing, inspection, marketing, distribution and/or sale of CSST and/or placing CSST into the stream of commerce, which may have caused the CSST to fail in the course of its normal and intended use;

k.   Failing to design, engineer, manufacture, test, inspect, market, distribute and/or sell CSST and/or place the CSST into the stream of commerce in such a way as to not create a foreseeable risk of harm to people and/or property;

l.   Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or information concerning the defect(s) and/or deficiency(ies) that caused the CSST to fail in the course of its normal and intended use; and

m.   Failing to properly design, engineer, manufacture, inspect, test, distribute, sell and/or market the CSST and/or place the CSST into the stream of commerce so as to ensure its fitness and safety.

36.    The negligence and carelessness described in the preceding paragraphs were committed by Defendant Omega and/or its duly authorized agents, servants, workmen, contractors, employees and/or other authorized representatives of Defendant Omega, acting within the scope and during the course of their relationship, agency and/or employment.

37.    The July 18, 2012 fire and resulting damage was a direct, proximate and foreseeable result of Defendant Omega's negligence and/or carelessness.

38.    As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's Insured sustained damages in excess of $600,000.00.

39.    Pursuant to the Policy, Cincinnati anticipates making payments to or on behalf of Plaintiff's Insured in excess of $600,000.00 in connection with the subject fire.

40.    Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments it will make to Plaintiff's Insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant Omega in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

### COUNT III
### Plaintiff v. Omega
### (Breach of Warranty of Merchantability)

41.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

42.    Defendant Omega expressly and/or impliedly agreed to design, engineer, manufacture, inspect, test, distribute, sell and/or market CSST and/or place CSST into the

stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

43.     Defendant Omega could reasonably expect that homeowners generally, and Plaintiff's Insured specifically, might utilize CSST.

44.     Plaintiff's Insured relied on Defendant Omega's express and/or implied representations that the CSST was safe and fit for its normal and intended use.

45.     Plaintiff's Insured utilized the CSST in a foreseeable and ordinary manner and yet sustained damage when the fire occurred due to defects in the design, engineering, manufacture, inspection, testing, distribution, sale and/or marketing of the CSST and/or placing the CSST into the stream of commerce, which caused damage to the Property.

46.     Defendant Omega designed, engineered, manufactured, inspected, tested, distributed, sold, marketed and/or placed into the stream of commerce CSST that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

47.     The CSST was not fit for the ordinary purpose for which it was intended because it failed when lightning struck at or near the Property, thereby releasing gas and igniting a fire that caused significant damage to the Property.

48.     The fire of July 18, 2012 and resultant damages were the direct, proximate and foreseeable result of the unmerchantable condition of the CSST sold by Defendant Omega.

49.     As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's Insured sustained damages in excess of $600,000.00.

50.     Pursuant to the Policy, Cincinnati anticipates making payments to or on behalf of Plaintiff's Insured in excess of $600,000.00 in connection with the subject fire.

51.     Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments it will make to Plaintiff's Insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant Omega in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

## COUNT IV
### Plaintiff v. Omega
### (Breach of Warranty of Fitness For a Particular Purpose)

52.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

53.     Defendant Omega had reason to know the particular purpose for which its CSST was required and/or intended to be utilized.

54.     Defendant Omega knew or had reason to know that consumers generally, and Plaintiff's Insured specifically, would rely on Defendant Omega's skill or judgment to furnish suitable CSST.

55.     Defendant Omega could reasonably expect that homeowners generally, and Plaintiff's Insured specifically, might utilize CSST in the Property.

56.     Defendant Omega's CSST was not fit for the particular purpose for which it was required because it failed when lightning struck at or near the Property, thereby releasing gas and igniting a fire that caused significant damage to the Property.

57.     The fire of July 18, 2012 and resultant damages were the direct, proximate and foreseeable result of the CSST's unfitness.

58.     As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's Insured sustained damages in excess of $600,000.00.

59.     Pursuant to the Policy, Cincinnati anticipates making payments to or on behalf of Plaintiff's Insured in excess of $600,000.00 in connection with the subject fire.

60.     Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments it will make to Plaintiff's Insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant Omega in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

## COUNT V
### Plaintiff v. DWS
#### (Negligence)

61.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

62.     Defendant DWS knew or had reason to know that the CSST was likely to be dangerous when used in the manner or for the purpose for which it was designed and thus, owed Plaintiff's insured a duty to provide a reasonable and adequate warning of the fire danger associated with CSST.

63. Defendant DWS had reason to believe that the CSST was defective or was likely to have a defect that would make it dangerous when used for a reasonably foreseeable purpose or in a reasonably foreseeable manner and thus, had a duty to make a reasonable inspection of the CSST to protect its users, specifically Plaintiff's insured, from an unreasonable risk of harm.

64. Defendant DWS owed Plaintiff's insured a duty to exercise ordinary care and skill in connection with the distributing, marketing, selling, installation, inspection, repair and/or testing of the CSST in the Property.

65. Defendant DWS owed Plaintiff's insured a duty to exercise ordinary care to protect Plaintiff's insured against the risk of fire.

66. Defendant DWS owed Plaintiff's insured a duty to exercise ordinary care to determine that the CSST was reasonably fit for the purpose for which it was intended to be used.

67. Defendant DWS breached these duties by failing to exercise ordinary care and skill in the distribution, sale, marketing, installation, inspection, testing and/or repair of the CSST.

68. The July 18, 2012 fire and resultant damages were the direct and proximate result of the negligence, gross negligence, recklessness and/or carelessness and/or negligent acts and/or omissions by Defendant DWS, both generally and specifically, as follows:

      a. Utilizing CSST in the Property;

b.     Failing to observe and exercise a reasonable degree of care and skill in the distribution, marketing, selling, installation, testing, inspection and/or repair of the CSST;

c.     Failing to distribute, market, sell, install, test, inspect and/or repair the CSST so that it was safe and fit for its intended use;

d.     Failing to ensure that CSST could withstand anticipated levels of electrical activity generated by lightning strikes;

e.     Failing to bond and/or ground and/or provide other forms of lightning protection for the CSST;

f.     Failing to warn Plaintiff's insured that the CSST piping was defective and could start a fire;

g.     Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the distribution, sale, marketing, installation, testing, inspection and/or repair of the CSST so that it was safe and free from risk of fire;

h.     Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant DWS knew, or in the exercise of due care, should have known, were not properly trained to distribute, sell, market, install, test, inspect and/or repair the CSST;

i.     Failing to distribute, sell, market, install, test, inspect and/or repair the CSST in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

j.    Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the distribution, marketing, sale, installation, testing, inspection and/or repair of the CSST, which may have caused the CSST to fail in the course of its normal and intended use;

k.    Failing to distribute, market, sell, install, test, inspect and/or repair the CSST in such a way as to not create a foreseeable risk of harm to people and/or property;

l.    Failing to provide adequate instructions, warnings and/or information concerning the defect(s) and/or deficiency(ies) that caused the CSST to fail in the course of its normal and intended use; and

m.    Failing to properly distribute market, sell, install, test, inspect and/or repair the CSST so as to ensure its fitness and safety.

69.    The negligence and carelessness described in the preceding paragraphs were committed by Defendant DWS and/or its duly authorized agents, servants, workmen, contractors, employees and/or other authorized representatives, acting within the scope and during the course of their relationship, agency and/or employment.

70.    The July 18, 2012 fire and resulting damage was a direct, proximate and foreseeable result of Defendant DWS' negligence and/or carelessness.

71.    As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's insured sustained damages in excess of $600,000.00.

72.     Pursuant to the Policy, Plaintiff Cincinnati has made payments to or on behalf of Plaintiff's insured in excess of $600,000.00 and anticipates making additional payments to Plaintiff's insured, in connection with the subject fire.

73.     Plaintiff Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments made to Plaintiff's insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant DWS in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances

### COUNT VI
### Plaintiff v. DWS
### (Breach of Contract)

74.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

75.     Plaintiff's insured, as an intended beneficiary, entered into an oral and/or written agreement with Defendant DWS, wherein DWS agreed to perform plumbing services in connection with the construction of the home at the Property, including but not limited to the distribution, marketing, sale, installation, inspection, repair and/or testing of the CSST in the home at the Property.

76.     Plaintiff's insured was the intended beneficiary of any agreements entered into by Defendant DWS regarding the construction of the Property, including but not limited to the distribution, marketing, sale, installation, inspection, repair and/or testing of the CSST in the home at the Property.

77.     Defendant DWS expressly and/or impliedly held itself out to be and represented itself to be knowledgeable and experienced in performing plumbing services, the installation of fireplaces and gas piping.

78.     Defendant DWS expressly and/or impliedly agreed to perform said work in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations, codes and/or other standards, as well as in accordance with all industry standards and trade practices.

79.     Plaintiff's insured relied on the express and/or implied representations made by Defendant DWS.

80.     Defendant DWS breached its agreement with Plaintiff's insured by failing to provide plumbing services, including but not limited to the distribution, marketing, sale, installation, inspection, repair and/or testing of the CSST in the home at the Property, in a good and workmanlike manner and in accordance with all relevant local, state and federal laws, rules, regulations, codes and/or other standards, as well as in accordance with all industry standards and trade practices.

81.     Plaintiff's insured performed all required conditions precedent and met all other obligations under the agreement with Defendant DWS.

82.     The July 18, 2012 fire and resultant damages occurred as the direct, proximate and foreseeable result of Defendant DWS' breach of contract as set forth above.

83.     As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's insured sustained damages in excess of $600,000.00.

84. Pursuant to the Policy, Plaintiff Cincinnati has made payments to or on behalf of Plaintiff's insured in excess of $600,000.00 and anticipates making additional payments to Plaintiff's insured, in connection with the subject fire.

85. Plaintiff Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's insured to the extent of the payments made to Plaintiff's Insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant DWS in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances

### COUNT VII
### Plaintiff v. DWS
### (Strict Liability)

86. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

87. Defendant DWS was engaged in the business of distributing, selling, marketing, installing, testing, inspecting and/or repairing CSST.

88. The CSST was supplied by Defendant DWS in a defective condition which rendered it unreasonably dangerous.

89. The CSST that was supplied by Defendant DWS was expected to, and did, reach Plaintiff's insured's property without substantial change in the condition in which it was designed, engineered, manufactured, inspected, tested, distributed, sold, marketed and/or placed into the stream of commerce.

90. The CSST was defective, in that it failed, released gas and caused a substantial fire.

91.     Plaintiff's insured utilized the CSST for the purposes and in the manner intended and/or reasonably anticipated by Defendant DWS.

92.     Plaintiff's insured could not, by the exercise of reasonable care, have discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the CSST.

93.     Plaintiff's damages resulting from the July 18, 2012 fire were the result of:

      a.     The manufacturing defect in the CSST, evidenced by the fact that it failed, leaked gas and ignited a fire, existed when the CSST was sold and/or distributed to Plaintiff's insured, the ultimate user;

      b.     The failure to warn Plaintiff's insured of the serious and foreseeable risk of harm posed by the defect(s) and/or deficiency(ies) in the CSST, which caused it to fail, leak gas and ignite a fire in the course of its normal and intended use; and

      c.     The design defect, evidenced by the failure of the CSST, resultant gas leak and fire, which existed when the CSST was sold and/or distributed to Plaintiff, the ultimate user.

94.     The July 18, 2012 fire and resultant damages occurred as the direct, proximate and foreseeable result of the defective condition of the CSST as set forth above.

95.     As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's insured sustained damages in excess of $600,000.00.

96.     Pursuant to the Policy, Plaintiff Cincinnati has made payments to or on behalf of Plaintiff's insured in excess of $600,000.00 and anticipates making additional payments to Plaintiff's insured, in connection with the subject fire.

97.     Plaintiff Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's Insured to the extent of the payments made to Plaintiff's insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant DWS in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances

### COUNT VIII
### Plaintiff v. DWS
### (Breach of Warranty of Merchantability)

98.     Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

99.     Defendant DWS expressly and/or impliedly agreed to distribute, market, sell, install, inspect, test, and/or repair the CSST in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

100.    Plaintiff's insured relied on Defendant DWS' express and/or implied representations that the CSST was safe and fit for its normal and intended use.

101.    Plaintiff's insured utilized the CSST in a foreseeable and ordinary manner and yet sustained damage when the fire occurred due to defects in the design, engineering, manufacture, inspection, testing, distribution, sale and/or marketing of the

CSST and/or placing the CSST into the stream of commerce, which caused damage to the Property.

102.     Defendant DWS distributed, marketed, sold, installed, tested, inspected and/or repaired CSST that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

103.     The CSST was not fit for the ordinary purpose for which it was intended because it failed when lightning struck at or near the Property, thereby releasing gas and igniting a fire that caused significant damage to the Property.

104.     The fire of July 18, 2012 fire and resultant damages were the direct, proximate and foreseeable result of the unmerchantable condition of the CSST sold by Defendant, DWS.

105.     As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's insured sustained damages in excess of $600,000.00.

106.     Pursuant to the Policy, Plaintiff Cincinnati has made payments to or on behalf of Plaintiff's insured in excess of $600,000.00 and anticipates making additional payments to Plaintiff's insured, in connection with the subject fire.

107.     Plaintiff Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's insured to the extent of the payments made to Plaintiff's insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant DWS in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances

## COUNT IX
## Plaintiff v. DWS
### (Breach of Warranty of Fitness for a Particular Purpose)

108.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

109.    Defendant DWS had reason to know the particular purpose for which the CSST was required and/or intended to be utilized.

110.    Defendant DWS knew or had reason to know that consumers generally, and Plaintiff's insured specifically, would rely on Defendant DWS' skill or judgment to furnish suitable CSST.

111.    The CSST distributed, marketed, sold, installed, tested, inspected and/or repaired by Defendant DWS was not fit for the particular purpose for which it was required because it failed when lightning struck at or near the property, thereby releasing gas and igniting a fire that caused significant damage to the Property.

112.    The fire of July 18, 2012 fire and resultant damages were the direct, proximate and foreseeable result of the CSST's unfitness.

113.    As a result of the damages and losses from the July 18, 2012 fire, Plaintiff's insured sustained damages in excess of $600,000.00.

114.    Pursuant to the Policy, Plaintiff Cincinnati has made payments to or on behalf of Plaintiff's insured in excess of $600,000.00 and anticipates making additional payments to Plaintiff's insured, in connection with the subject fire.

115.    Plaintiff Cincinnati is now contractually, legally and equitably subrogated to the rights of recovery of Plaintiff's insured to the extent of the payments made to Plaintiff's Insured.

WHEREFORE Plaintiff demands judgment in its favor and against Defendant DWS in an amount in excess of $600,000.00, together with interest, costs and such other relief as this Honorable Court deems just and proper under the circumstances.

### JURY DEMAND

A trial by jury is hereby requested in the maximum number allowed by law at the time of the trial of the within action.

Respectfully submitted,

MICHAEL F. WALLACE, ESQUIRE
*Admitted Pro Hac Vice*
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
20 East Taunton Road, Suite 403
Berlin, New Jersey 08009
(856) 767-6800 – Telephone
(856) 767-6810 – Facsimile
wallacem@stutmanlaw.com
*Attorneys for Plaintiff*


MARK L. WAKEFIELD, ESQUIRE (0017614)
LOWE EKLUND WAKEFIELD & MULVIHILL
Tower City Center
610 Skylight Office Tower
1660 West Second Street
Cleveland, Ohio 44114-1454
(216) 781-2600 telephone
(216) 781-2610 facsimile
dmulvihill@lewm.com
*Attorneys for Plaintiff*


Dated: 7/1/13